IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEANDRO MUNIZ and AL MUNIZ,

      Plaintiffs,

vs.                                      No. CIV 99-666 MV/LCS

BOARD OF COUNTY COMMISIONERS
OF THE COUNTY OF SANTA FE,
et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment

Based on Qualified Immunity, filed March 16, 2000 **[Doc. No. 24]**. The Court, having considered

the briefs, relevant law and being otherwise fully informed, finds that the motion is not well taken

and will be **DENIED** as explained below.

### FACTUAL BACKGROUND

Taken in the light most favorable to the nonmoving party, the Court finds the following

material facts to be undisputed.:[1] The Court also notes all genuine disputes of material fact raised

by the parties.

On October 5, 1997, and thereafter, Defendants Edward Medina, Ernie Romero, Michael

Eiskant, Jeffrey Martinez and Severo Romero were employed as law enforcement officers and

---

[1] The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Mere assertions that a fact is or is not controverted are insufficient. *Id.*

commissioned Deputy Sheriffs of the County of Santa Fe, State of New Mexico.  On the evening

of Sunday, October 5, 1997, at approximately 9:24 PM, the Santa Fe County Sheriff's

Department Dispatch Center received a 911 call from complainant Edward Gonzales.  Mr.

Gonzales requested emergency police assistance for a male subject or subjects battering him and

pointing a gun at him at his residence, space 93 in the Zia Mobile Home Park in Santa Fe County.

The dispatcher on duty transmitted a "fight in progress" call and dispatched to that address

Deputy Medina and back up assistance Deputy Romero, Deputy Martinez and Deputy Eiskant.

Possibly based on a second 911 call, the dispatcher subsequently advised the units to "bolo" (be

on the lookout) and that the suspect was "10-80" (armed) and leaving the scene in a green van.

As Deputy Medina entered the vicinity, Edward Gonzales ran up to his vehicle and told

him that one of the suspects (later identified as Leandro Muniz) had pulled out a gun and

threatened to kill him and was in the process of driving away in a green van.  Mr. Gonzales

appeared to the officers to be frightened, excited and concerned.  Deputy Medina observed a deep

scratch and abrasions around Edward Gonzales' right eye and temple.

Deputy Medina was able to stop the van at space 71 before it left the area.  At that time,

Deputies Martinez, Eiskant, and Romero arrived at the scene.  The officers acting together

conducted a felony traffic stop, whereby the driver, Leandro Muniz, and the passenger, Al Muniz

Sr., were both handcuffed and patted down for the officer's safety and each placed separately in a

police vehicle.  The officers then proceeded to search the vehicle where they found a chrome .22

caliber loaded handgun with no round in its chamber inside a fanny pack laying near the driver's

side floor board.  The officers contend that the fanny pack was unzipped, while Plaintiffs maintain

that the fanny pack was in fact zipped.  The gun was registered to Al Muniz Sr.  Upon finding the

2

handgun, Deputy Romero displayed the weapon in plain view of everyone at the scene, including Roberta and Edward Gonzales.  Neither Plaintiff was asked for permission to search the vehicle.

Deputy Medina thereafter returned to space 93, where Edward Gonzales resided and proceeded to interview him and his wife Roberto Gonzales.  Deputy Medina contends that he conducted the interviews separately and independently.  Plaintiffs aver that the interviews were conducted together with Edward and Roberta Gonzales in the presence of each other, and the interview lasted only two to three minutes.  From the interview, Deputy Medina learned that Edward and Roberta Gonzales were married and living together; Al Muniz Sr and Roberta Gonzales were previously romantically involved and had a son, Al Muniz Jr;  Leandro Muniz was the father of Al Muniz, Sr. and the grandfather of Al Muniz, Jr.   Deputy Medina further learned that the argument which triggered the alleged criminal acts by Leandro and Al Muniz Sr., involved the alleged mistreatment of Al Jr. by his stepfather Edward Gonzales.

Edward and Roberta Gonzales told Deputy Medina essentially the same summarized version of events:  At about 9:15 p.m., Leandro Muniz and Al Muniz Sr. had arrived at the Gonzales residence to return Al Jr. after having spent the day in Albuquerque.  Al Sr. asked Edward and Roberta Gonzales to come outside and talk, whereupon he confronted them about the alleged mistreatment of Al Jr, his son.  Al Sr. then allegedly began to threaten Edward Gonzales, punched him and a fist fight ensued.  During the fight, Leandro Muniz allegedly went to the van, retrieved a handgun and threatened to shoot Edward Gonzales.  Roberta Gonzales informed police that she tried to grab the gun and attempted to break up the fight.  Edward Gonzales stated that he returned to the residence and called 911.  Thereafter, Al Muniz Sr. and Leandro Muniz allegedly fled the scene.  Both Edward and Roberta Gonzales accurately

3

described the weapon allegedly brandished by Leandro Muniz, however, there is a dispute of fact whether they gave their descriptions independently or in the presence of each other. Edward and Roberta Gonzales also gave handwritten statements under affirmation which were essentially the same as their verbal statements. Plaintiffs allege that Edward and Roberta Gonzales were visibly intoxicated, however, the officers on the scene did not observe signs of intoxication.

Al Muniz Sr. contends that he was not given an opportunity to tell his version of events until he was taken to the detention center, but rather was instructed to keep quiet. However, Deputy Medina claims that Al Muniz Sr. gave the following version of events prior to his arrest: During a visit his son Al. Jr. had told him that his stepfather, Edward Gonzales, was treating him abusively. When Al Muniz Sr. called this to Edward Gonzales' attention upon returning Al Jr. home, Edward Gonzales ordered him off the property. Leandro Muniz and Al Muniz Sr. proceeded to leave when Edward Gonzales attacked Al Muniz Sr. and threatened to beat up Leandro Muniz. Leandro Muniz stated words to the effect: "I don't want to fight you, but I could shoot you." Leandro Muniz did not take out the gun. Thereafter, Leandro Muniz and Al Sr. left the scene in the van. In his handwritten statement, given after he had been arrested and booked, Al Sr. stated "My father [Leandro Muniz] replied [to Edward Gonzales] get out of my face now I won't fight you but I could sure shoot your ass" and "when Ed fainted (sic) a punch at my dad my father fainted (sic) to pull something to protect himself but did not pull out the gun." Al Muniz alleges that he had visible bruises and cuts on his face.

Deputy Medina states that he did not interview Leandro Muniz because Leandro Muniz was agitated and acting in a hostile manner allegedly threatening to report the officers. Leandro Muniz however denies this description and states that he was cooperative throughout his

4

detention.  Nonetheless, Deputy Medina understood that Leandro Muniz denied the allegations that he had pulled out a gun.

Alan Jr. was present and had witnessed the entire fight.  Deputy Medina requested to interview Al Jr., a minor, but was refused permission by Roberta Gonzales who said her son was very upset.  Deputy Medina did not pursue the interview, believing that Roberta Gonzales had the legal right to refuse the interview on behalf of her son.  Deputy Medina did not request permission from Al Sr. to interview his son.

David Quinones, a resident of the Zia Mobile Home Park observed the fight between Edward Gonzales, Leandro Muniz and Al Muniz Sr.  His version of events corroborates Leandro Muniz's and Al Muniz Sr.'s version of events.  According to Quinones, Edward Gonzales started the fight, attacking Al Muniz Sr. and Leandro Muniz.  No gun was ever pulled out.  Quinones attests that he informed police of these facts, but was never contacted again.  It is not clear which police officer Quinones spoke with.  In an interview given to Plaintiff's private investigator, Quinones stated that he informed Al Jr. that he would be available to speak to the police, but that the police never contacted him.  The Defendants state that they had no knowledge that there was a third party witness to the events and that David Quinones did not volunteer his observations to the police the night of the incident.  Plaintiffs further contend that there were several potential eye-witnesses to the fight, given that it took place in plain view of several neighboring mobile homes.  None of these potential witnesses were interviewed by police.  The Defendants state that they had no knowledge of any other potential witnesses and although their emergency lights were engaged and visible at the mobile home park, no one came forward with information.

Deputy Medina arrested Leandro Muniz for Aggravated Assault with a Deadly Weapon, a

fourth degree felony in violation of NMSA 1978 §30-3-2(A), and arrested Al Muniz Sr. for

Battery, a misdemeanor in violation of NMSA 1978 § 30-3-4.  Deputy Medina also concluded

that both Al Muniz Sr. and Leandro Muniz had committed a misdemeanor violation of the New

Mexico Family Violence Protection Act.

Leandro Muniz states that he informed Deputy Muniz that he was a heart patient, was

having chest pains and needed medical attention.  His request was allegedly denied.  Deputy

Medina only recalls that Leandro Muniz stated he had a history of heart problems and requested a

drink of water, which he was given.

After the arrests, Plaintiffs were transported to the local detention facility.  There is a

dispute of whether either Plaintiff was advised of his Miranda rights.  Upon arrival at the

detention facility, Leandro Muniz complained of chest pains and was taken to the hospital, where

he remained for the next day.  Roberta and Edward Gonzales later recanted their allegations and

statements to the police, admitting that they had lied.

## LEGAL STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are

intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment

is appropriate when the court, viewing the record in the light most favorable to the non-moving party,

determines that "there is no genuine dispute over a material fact and the moving party is entitled to

judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support

the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.

1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## DISCUSSION

Plaintiffs bring claims against the above-named Defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983, alleging in essence that Defendants arrested them falsely and without probable cause in violation of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.[2]  Plaintiffs also allege a variety of state law torts including assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of

---

[2]      From Plaintiffs' Response in Opposition to the Motion for Summary Judgment it is clear that Plaintiffs are also alleging an unlawful search of their vehicle in violation of the Fourth and Fourteenth Amendment.  However, since Defendants do not address this aspect of Plaintiffs' claims in their briefs, the Court likewise will not consider this issue.

process, libel, slander and defamation of character.  Plaintiffs have sued the Board of County Commissioners on a variety of supervisory bases.  Defendants now move for summary judgment on the grounds that they are entitled to qualified immunity for the arrests which they contend were based on probable cause.  Defendants also seek summary judgment on Plaintiffs' claims for supervisory liability and the claims brought pursuant to the New Mexico Tort Claims Act.

A.    Qualified Immunity

        Under the doctrine of qualified immunity, "government officials performing discretionary functioned generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800 818 (1982) (*citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).  The application of this standard varies depending on the claim alleged and must be assessed based on the particular facts of the case.  In the summary judgment context, once a public official raises a qualified immunity defense, the plaintiff bears the burden of coming forward "with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred."  *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988). For the Plaintiffs to prevail against an assertion of qualified immunity "the contours of an asserted right must have been sufficiently clear that reasonable officials in their positions would understand that their actions would violate that right."  *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252, 1255 (10th Cir. 1998) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Plaintiff is not required to show that the very conduct in question has previously been held unlawful.  *See Anderson*, 483 U.S. at 640.  Rather, he is

8

required to demonstrate that the unlawfulness was "apparent in light of established law." *Id.*

In *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court considered the application of qualified immunity in warrantless search cases, finding that the relevant inquiry "is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the defendant officer's] warrantless searches to be lawful, in light of clearly established law and the information the searching officers possessed." *Id.* at 641.  A police officer may arrest a person without a warrant if there is probable cause to believe that person has committed a crime. *Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has *reasonably trustworthy* information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256 (10th Cir. 1998) (emphasis added).  Even officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity.  *Hunter v. Bryant,* 502 U.S. 224, 227 (10th Cir. 1991). It was important to assess the reasonableness of the officer's belief based on the particular circumstances and the information he or she had at the time.

In determining whether an officer has reasonably trustworthy information to constitute probable cause, clearly established case law requires officers to look to the "totality of the circumstances." *Baptise*, 147 F3d at 1259.  While officers may weigh the credibility of witnesses in making a probable cause determination, they may not ignore *available and undisputed* facts. *Id.* (emphasis in original).  Although an officer does not have a duty to investigate alleged  alibi witnesses, an officer is required to undertake an independent investigation which includes interviewing witnesses readily available at the scene, investigating basic evidence, or otherwise

inquiring whether a crime has been committed at all. *Romero* , 45 F.3d at 1476-77.  Thus, an officer may not solely rely on the statements of an accuser without conducting an independent investigation to establish probable cause for a warrantless arrest.  *See Baptiste*, 147 F.3d at 1259 *Lusby v. T.G.&Y Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *vacated on other grounds*, 474 U.S. 805 (1985); *Sevigny v. Dicksey*, (4th Cir. 1988) (no probable cause where officer failed to avail himself of readily available information to clarify the factual situation; *BeVier v. Hucal* , 806 F.2d 123 (7th Cir. 1986) (officer may not close his or her eyes to facts and reasonable avenues of investigation must be pursued); *Moore v. The Marketplace Restaurant*, 754 F.2d 1336 (7th Cir. 1985) (no probable cause for arrest based on allegations of purported victim where officers failed to ask questions of person accused or otherwise conduct a proper investigation).  However, in conducting the investigation,  a police officer is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.  *See Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988); *cf. Marx v. Gumbinner*, 905 F.2d 1503, 1507, n.6 (11th Cir. 1990) (officer in making probable cause determination is not required to consider an alternative version of events).

Defendants argue that they are entitled to qualified immunity for the arrests of Leandro Muniz and Al Muniz Sr. because they reasonably concluded that there was probable cause to believe that the Plaintiffs had committed the alleged crimes based upon the officers' investigations.  Deputy Medina asserts that he based his probable cause determination on several factors including:  Edward Gonzales' statements to the 911 dispatch, the observation of the green van pulling away from the scene of the alleged crime; a deep scratch and abrasion over Gonzales'

eye; the loaded weapon in the unzipped fanny pack; the independent verbal and written statements of Edward and Roberta Gonzales, as well as their independent descriptions of the weapon. Deputy Medina also considered Plaintiff's denial of the allegations, which he weighed in his assessment of probable cause.  The Defendants thus contend that the "facts and circumstances within their [their knowledge]" were "sufficient to warrant a prudent person...in believing, in the circumstances shown, that the suspect has committed" the crimes.  *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  Plaintiffs' offer several material facts which challenge the corroborating circumstances upon which Deputy Medina states he made his probable cause assessment.  In particular, Plaintiffs offer evidence that the statements of Roberta and Edward Gonzales were taken in concert, rather than independently.  Further, Plaintiffs' evidence indicates that the weapon was in a zipped fanny pack, rather than an open fanny pack which supported the Defendants' conclusion that the weapon had been brandished.   In addition, the corroborating value of Roberta and Edward Gonzales' descriptions of the handgun is undermined, given the evidence suggesting that the handgun was displayed for all to see prior to taking the statements of the Roberta and Edward Gonzales.  With regard to Edward Gonzales' facial injuries, these facial injuries are probative only to whether a fight took place - which is not disputed - not to who actually started the fight.  Moreover, Plaintiff's evidence indicates that Al Muniz Sr. also had significant facial injuries, which reasonably corroborates his version of events.  The totality of this evidence undermines the corroborating facts upon which Deputy Medina relied in assessing probable cause.

Without these corroborating facts, the sole pertinent evidence left for a probable determination are the statements of  Roberta and Edward Gonzales.  However, Plaintiff offers

ample evidence suggesting that it was not reasonable for the Defendants to rely soley upon the statements of the Roberta and Edward Gonzales without conducting further investigation.  See, For instance, Plaintiffs contend that they were not given the opportunity to present their own version of events or offer their own corroborating facts. Defendants correctly assert that they were not obligated to give credence to the denials of an arrestee, as it is common for suspects to deny the allegations facing them.  *See Criss v. City of Kent*, 867 F.2d at 263.  However, case law clearly establishes that an officer may not rely solely upon the statements of an alleged victim without conducting an independent investigation.  *See Baptiste*, 147 F.3d at 1259.  Plaintiffs' evidence suggests that Leandro Muniz and Al Muniz Sr. were cooperating fully with law enforcement and were eager to share their version of events.  At a minimum, under these circumstances, a reasonable officer would have questioned the accused prior to making a credibility determination. *See, e.g., Moore v. The Marketplace Restaurant*,754 F.2d 1336 (no probable cause for arrest based on allegations of purported victim where officers failed to ask questions of person accused or otherwise conduct a proper investigation);

Most significant is the Defendants' alleged failure to investigate third party witnesses. Defendants were aware that Al Muniz, Jr. had witnessed the entire incident, but failed to question him after Roberta Gonzales said he was too upset.  Defendants contend that it was reasonable for them to assume that Roberta Gonzales as his mother had the legal right to refuse an interview on behalf of her son.  However, clearly established law requires that an officer interview all readily available witnesses in conducting an investigation to determine probable cause.  *Romero v. Fay,* 45 F.3d at 1476.  Equally evident is that the Defendants never sought permission from Al Muniz Sr. to interview his son.  The Court disagrees with Defendants assertion that it was reasonable for

the Defendants to fail to interview Al Muniz Jr under these circumstances.  Plaintiffs' evidence also suggests that the Defendants failed to conduct an interview of David Quinones who attests that he informed the officers on the scene that Gonzales started the fight and Leandro Muniz did not brandish a weapon. Although the Defendants deny that they were aware of any third party witness, this evidence creates a significant issue of material fact.  If indeed David Quinones had informed the Defendants of his independent observations, then the reasonableness of the probable cause determination is seriously undermined.  Quinones' statements cast significant doubt upon the credibility of Roberta and Edward Gonzales and further corroborate any statements that the Defendants could have elicited from the Plaintiffs had they been questioned at the scene.  At the very least it is clear that David Quinones informed Al Jr. that he was willing to speak with police. Had the Defendants fulfilled their duty to interview Al Jr, who was readily available at the scene, then they would have been referred to David Quinones.  The Defendants also suggest that it was reasonable for them to not question any of the neighbors since no one came forward to offer any eye-witness statements.  The Court disagrees with this logic.  The evidence suggests that the fight took place in an open area within the view of many of the neighborhood residences.   Thus, it is likely that there were potential eyewitnesses.  It is not surprising that potential witnesses would be reluctant to come forward, risking their own security, and inform the police of observations that would implicate their neighbor.  A reasonably prudent investigation would have included questioning close and readily available neighbors to inquire of their possible observations, instead of waiting for eye witnesses to approach the police in the presence of Edward and Roberto Gonzales.

Construing the evidence in the light most favorable to Plaintiffs, the nonmoving party, the

Court finds that there are genuine issues of material fact precluding a finding that the "facts and circumstances within the arresting officer's knowledge" were "reasonably trustworthy or sufficient to lead a prudent person to believe that the [Plaintiffs had] committed ... an offense." *Romero*, 45 F.3d at 1476 .  It is incumbent upon officers to base a probable cause assessment upon the "totality of the circrumstances." *Baptise*, 147 F3d at 1259.  Where an officer fails to reasonably inquire into the totality of the circumstances or gather readily available facts which would inform their assessment, as Plaintiff's evidence suggests, then there is an insufficient factual and circumstantial basis upon which the officers could reasonably conclude that probable cause exists.  Accordingly, Defendants have not established an entitlement to qualified immunity at this time as to the Plaintiffs constitutional claims.[3]

B.     Tort Liability

Defendants also seek summary judgment on Plaintiffs claims under the New Mexico Tort Claims act alleging assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander and defamation of character.  Defendants do not dispute that the New Mexico Tort Claims Act waives sovereign immunity for these torts when caused by law enforcement officers while acting within the scope of their duties.  *See* NMSA 1978 § 41-4-12 (1996 Repl. Pamp.).  The employing governmental entity and its officers, however, may assert any available defense.  *See* NMSA 1978, § 41-4-14 (1996 Repl. Pamp.).  It is clear that a valid

---

[3]     Plaintiffs and Defendants also spend much time discussing whether there was probable cause to arrest Al Muniz Sr. for a misdemeanor that had taken place outside of the presence of the officers, as well as the propriety of charging the Plaintiffs under New Mexico Family Violence Protection Act.  *See, e.g., State v. Lyon*, 103 N.M. 305 (constitution prohibits a warrantless arrest for a misdemeanor that was not committed in the officer's presence). The Court does not reach these arguments, instead basing its conclusion on the failure of the officers to conduct a reasonable and proper investigation.

justifiable arrest based upon probable cause followed by lawful imprisonment and prosecution defeat civil liability for these common-law torts.  *See, e.g. Restatement (Second) of Torts* § 118 (privilege to arrest based upon probable cause), § 143 (privilege to impose confinement upon lawful arrest),§ 653 (probable cause obviates tort of malicious prosecution), §§ 558, 568, 593, 599, 600 (conditional privileges of defamatory torts); *see also Moor v. Burne Construction Co.,* 98 N.M. 190 (Ct. App), *cert. denied,* 98 N.M. 336 (1972) (under New Mexico common law, Restatement (Second) of Torts is persuasive authority entitled to great weight).  The Court has determined however, that genuine issues of material fact exist precluding a finding that the Defendants conducted a proper investigation and reasonably concluded that probable cause exists. As such, summary determination as to Plaintiffs' tort claims is not proper at this time.

C.     Supervisory Liability

       To establish liability of a supervisor in a § 1983 action, a plaintiff must show that the official, acting under color of state law, subjected or caused the complainant to be subjected to a deprivation of a right secured by the Constitution and laws. *See Rizzo v. Goode*, 423 U.S. 362 (1976). The plaintiff must demonstrate an affirmative link between the conduct of the individual supervisor and the alleged deprivation. *See Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990); *Gates v. Unified Sch. Dist.*, 996 F.2d 1035, 1042 (10th Cir. 1993) (*citing Parratt v. Taylor*, 451 U.S. 527 (1981)) ("a claim seeking personal liability in a civil rights suit must be predicated on the defendant actor's personal involvement; there must be an affirmative link to causally connect the actor with the alleged violation."). A defendant is sufficiently involved in a constitutional violation if he or she directly participates in the conduct causing the deprivation, fails to remedy the alleged wrong after learning of it, creates a policy or custom under which the unconstitutional practices

15

occur, or is grossly negligent in managing subordinates. *See Wright v. Smith*, 21 F.3d 496, 501 (2nd Cir. 1994). Plaintiffs claim supervisory liability on the grounds that the officers were not properly trained, and a reasonable supervisory officer, in reviewing the facts, would have known that probable cause was lacking for the arrests and continued detention of Leandro Muniz and Al Muniz Sr.  Defendants have asked the Court to dismiss the supervisory claims on the grounds that the arresting officers are entitled to qualified immunity.  The Court has denied qualified immunity because the material facts suggest that the officers did not have probable cause to arrest Plaintiffs. Consequently, the Court will not dismiss the supervisory liability claims at this time.

## CONCLUSION

The Court is satisfied that Plaintiffs have raised a genuine issue of fact as to whether there was probable cause for their arrests and whether the Defendants should be entitled to qualified immunity.

**WHEREFORE,**

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment Based on Qualified Immunity, filed March 16, 2000 **[Doc. No. 24]** is hereby **DENIED**.

**DATED** this 16th day of August, 2000.

_____
MARTHA VÁZQUEZ
U. S.  DISTRICT JUDGE

Attorney for Plaintiff                    Attorney for Defendants
John Bienvenu                             Michael Dickman

16